(No. 87-CC-3545—)

MELVIN WILLIAMS-EL, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed November 2, 1999.*

ROBERT M. HODGE, for Claimant.

JIM E. RYAN, Attorney General (MARK E. McCULLOUGH, Assistant Attorney General, of counsel), for Respondent.

## OPINION

FREDERICK, J.

This cause comes before the Court on Claimant's second amended complaint which was filed on April 4, 1995. Claimant, an inmate of the Illinois Department of Corrections, alleged that on March 12, 1987, Captain Bosen canceled Claimant's sick pass. Claimant attempted to have Captain Bosen allow him to see the eye doctor but Claimant's request was refused. Claimant further alleged that he then set a small fire in front of his cell to try to secure the attention of the superintendent of the cell house

to Claimant's situation. Claimant was then maced by Captain Bosen. Claimant seeks compensation of $5,000 for the deprivation of medical care and for being maced, all of which allegedly caused pain and suffering to Claimant's eye. The cause was tried before Commissioner Ufkes.

### The Facts

Pursuant to a request for admission of fact, the Respondent admitted the following facts:

That the Claimant, Melvin Williams-El, register no. A-01181, was at all times mentioned in the second amended complaint, a prisoner of the State of Illinois and in the care and custody of the Illinois Department of Corrections. Claimant was confined to the Pontiac Correctional Center, Pontiac, Illinois, and housed in the north cell house. Pontiac Correctional Center is a maximum security institution and is operated under the laws of the State of Illinois. The State of Illinois is the sole owner of the grounds, buildings, and other tangible property that make up the Pontiac Correctional Center. The State of Illinois is the ultimate employer of the security and administrative employees of the Illinois Department of Corrections and the employees are acting as agents and/or servants of the State of Illinois in their official duties as employees of the Illinois Department of Corrections.

Between March 3 and March 7, 1987, Claimant was prescribed both eye drops and Tylenol #3 by medical personnel of the Pontiac Correctional Center for a medical condition involving Claimant's right eye. Claimant had a prescription for dark glasses while incarcerated at Pontiac Correctional Center and Claimant was to see an eye doctor for problems with his right eye. Claimant was scheduled to see an eye doctor on March 12, 1987, by medical personnel of the Pontiac Correctional Center.

On March 12, 1987, the Pontiac Correctional Center was under lockdown conditions, which had no relation to Claimant's medical condition. Captain Bosen held the rank of captain. Claimant started his cell on fire. Claimant was subjected to a burst of "mace." Captain Bosen, who was acting in his official capacity as an agent and/or servant of the State of Illinois and employee of the Illinois Department of Corrections did, on March 12, 1987, write an "Inmate Disciplinary Report" against the Claimant, which reflects the fact that Claimant was "maced" while locked within his cell.

Claimant testified at trial that about a week before March 12, 1987, he was having pain in his eye and blurred vision. He went to the hospital and saw an eye doctor who filled out a special pass for Claimant to have dark glasses. Claimant was to see the doctor again and Claimant had a pass which allowed him to see the doctor even if the institution was on lockdown. Claimant had been told he had a detached retina. The night before he was to see the doctor, the prison was put on a routine, institutional lockdown. Claimant learned the lockdown would be for three or four days. Normally during a lockdown, all medical appointments are canceled. Claimant discussed the situation with a sergeant and asked to speak to a lieutenant or captain so he could keep his doctor's appointment. The captain arrived and Claimant gave him the pass. The captain refused to allow Claimant to leave his cell because Claimant was not dying or bleeding to death. The captain said, "You won't be going today," and tore up the pass. Then, Claimant requested to see the superintendent. The captain said the superintendent was not in and so Claimant asked to see the warden. Subsequently, Claimant tore some papers out of a magazine, balled them up, set them on fire, and threw the burning pages in front of his cell.

Claimant believed that this action would bring the super-intendent to his cell. The superintendent did come to Claimant's cell with the captain. Claimant explained the problem to the superintendent and showed him the copy of the pass the Claimant had retained. The captain stated he did not believe Claimant and asked to see Claimant's eye. When Claimant walked up to the bars of his cell and took his glasses off to show the captain his right eye, the captain pulled his mace out and sprayed Claimant in the face with the mace through the bars. The captain then cuffed Claimant and indicated Claimant was going to seg-regation. The superintendent said the captain shouldn't have done that and had Claimant seen by a doctor before Claimant was sent to segregation. Doctor Ali refused to treat Claimant before he was sent to segregation because Claimant had set a fire.

Claimant had been incarcerated for 22 years and was not sure when he started having eye problems. He had been seeing prison doctors four or five years for treat-ment of his eye. Claimant testified that since being maced, he has lost all the vision in his right eye. Claimant has had problems with his balance due to his loss of vi-sion. He also has problems reading.

Incident reports by Captain Bosen indicate that when they tried to put out the fire, Claimant threatened them with a wooden stick. Claimant denied that such ac-tivity took place. Claimant also denied the allegation in Correctional Officer Bush's report that Claimant wouldn't take sick call and refused to come out of his cell and was, therefore, maced.

Claimant eventually had surgery in May of 1987 for his detached retina and the retina was repaired. Claimant started losing his sight a couple of years after the surgery. Claimant believes the macing played a part in Claimant losing complete vision in his right eye.

Dr. George Castrovillo testified for the Respondent. He was a family practitioner and not an ophthalmologist. The medical records of Claimant indicate Claimant had a medical history of eye problems dating back to 1975 when he suffered a detached retina. Claimant had a second retinal detachment in 1981. Claimant received ongoing treatment and observation for glaucoma and a cataract in the right eye since 1981. Claimant had a cataract in his right eye prior to March 12, 1987. The medical records indicate Claimant had surgery in May, 1987. Claimant noticed the loss of vision in his right eye on May 15, 1987. Prior to May 15, 1987, Claimant's visual acuity was only 1/200 in the right eye. On May 15, 1987, Claimant noticed loss of vision in his right eye unaccompanied by any recent trauma.

The medical records also indicate Claimant saw Dr. Ali on March 12, 1987, at 10:50 a.m. The medical note indicates Claimant was in no acute distress. Dr. Castrovillo further testified that he has never known of mace to cause blindness and that mace would not have any permanent effect on the eyes. Mace causes an irritation to the eyes that stings. Usually within a day, the effects are resolved. Dr. Castrovillo also stated that he doubted that the mace would have aggravated Claimant's eye condition or caused blindness to Claimant.

Correctional Lieutenant Patrick Riley testified that if an inmate set a fire and then was threatening or belligerent, the use of mace on the inmate would be appropriate. Starting a fire, even in front of one's cell, is a serious violation of institutional rules.

## The Law

Claimant makes two claims. The first claim is that he was denied adequate medical care by Respondent because the Respondent's agent refused to allow him to

keep his doctor's appointment. The second claim is that Captain Bosen committed a battery on Claimant by his excessive use of force in macing Claimant.

Allegations of failure to provide reasonable medical care and treatment are allegations of medical malpractice. (*Moore v. State* (1988), 40 Ill. Ct. Cl. 254.) To prevail on a medical negligence action, the Claimant must prove, by a preponderance of the evidence, the standard of care by which Respondent's conduct is to be measured, that Respondent deviated from the standard of care, and that Respondent's deviation was a proximate cause of Claimant's injury. (*Whitehead v. State* (1998), 50 Ill. Ct. Cl. 287.) Allegations of improper medical care must be proven by expert testimony and the Court may not conclude on its own what is or what is not appropriate medical care under the circumstances of the case without the aid of such expert testimony. *Tackett v. State* (1993), 45 Ill. Ct. Cl. 334.

The Claimant must also prove his damages by a preponderance of the evidence and often expert testimony is required to prove damages. (*Harris v. State* (1989), 41 Ill. Ct. Cl. 184; *Dye v. State* (1996), 48 Ill. Ct. Cl. 452.) In this case, Claimant presented no expert testimony. Claimant has failed to meet his burden of proof of establishing the standard of care, a deviation of the standard of care, and that such deviation was a proximate cause of his injury. There was no evidence presented by Claimant to prove that missing his doctor's appointment on March 12, 1987, caused him any injury. There certainly was no evidence before the Court that proved that Claimant's eye condition was aggravated by the failure of Respondent's agent to allow Claimant to see the doctor on March 12, 1987.

Claimant's claim regarding the macing is a much closer case. The Respondent failed to call any witnesses

to directly rebut the testimony of Claimant as to the factual circumstances of the macing. However, even considering all of the testimony of Claimant and even assuming Captain Bosen to be the intemperate cretin Claimant makes him out to be, the Court must consider that Claimant intentionally set a fire in the cell block. This fire, however small, could have endangered Claimant, guards, or other inmates. Additionally, such action could have caused a serious security problem if not stopped immediately. Claimant admits he set the fire. Based on all of the evidence, we cannot say that Respondent was guilty of negligence or excessive force in using mace on Claimant while Claimant admitted setting a fire within the cell block. *Simmons v. State* (1991), 44 Ill. Ct. Cl. 304.

Additionally, Claimant has failed to prove the damages he claims from the mace by a preponderance of the evidence. Claimant failed to present any evidence that the mace aggravated his eye condition or caused the blindness in his right eye. The only evidence before the Court was that the mace did not aggravate the eye condition or cause blindness. While the Court would have given more weight to Dr. Castrovillo's testimony if he had been a specialist in diseases or conditions of the eye, we do give his testimony some weight because he was a doctor licensed to practice medicine and had been a doctor for over 35 years. His testimony was the only medical testimony before the Court and his testimony did not support Claimant's claims.

Claimant has failed to meet his burden of proving the Respondent used excessive force and has failed to prove his alleged damages by a preponderance of the evidence. For the foregoing reasons, it is the order of the Court that Claimant's claim be and hereby is denied.